UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| David V. Jordan, | ) | |
| | ) | |
| *Plaintiff*, | ) | Civil Action No. 1:15-cv-313 |
| | ) | |
| v. | ) | ORDER ADOPTING IN PART, AND |
| | ) | MODIFYING IN PART, THE REPORT |
| | ) | AND RECOMMENDATION OF |
| Unit Manager Bertolini, et al., | ) | MAGISTRATE JUDGE BAXTER TO |
| | ) | DENY DEFENDANTS' MOTION FOR |
| *Defendants*. | ) | SUMMARY JUDGMENT |
| | ) | |

Before the Court is the Report and Recommendation ("R&R") of the Honorable Susan Paradise Baxter, United States Magistrate Judge, recommending that the Court deny Defendants' Motion for Summary Judgment. *See* ECF Nos. 60, 96. Having reviewed the record, the briefs of the parties, the R&R, Defendants' objections to the R&R, and Plaintiff's opposition to Defendants' objections, the Court finds that Plaintiff failed to exhaust his administrative remedies as to Defendant Bertolini and hereby dismisses Plaintiff's claims against him. However, the Court denies the remaining Defendants' Motion for Summary Judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff David V. Jordan, an inmate formerly residing at the State Correctional Institution at Forest ("SCI Forest"),[1] brings the present 42 U.S.C. § 1983 action *pro se* against Defendants in their personal capacity. Second Am. Compl., ECF No. 27. Specifically, Plaintiff alleges that Defendants Bertolini, Friedline, Marino, Anderson, and Baummer, past or present employees at SCI Forest, retaliated against him in violation of his First Amendment right to file lawsuits and grievances. *Id*. Upon Magistrate Judge Baxter's recommendation, the Court denied Defendants' motion to dismiss Plaintiff's Second Amended Complaint. *See* R. & R. Deny Mot. Dismiss, ECF

---

[1] As of July 15, 2018, Plaintiff is an inmate at SCI Fayette. Pl.'s Mot. to Resolve Objs. 2, ECF No. 101.

No. 42; Order Adopting R. & R., ECF No. 44. The parties conducted discovery and Defendants filed a motion for summary judgment, seeking dismissal on the grounds that Plaintiff had failed to exhaust his administrative remedies against Defendant Bertolini as required by the Prisoner Litigation Reform Act, 42 U.S.C. § 1997e(a). *See* Defs.' Mot. Summ. J. Defendants also argued that Plaintiff's retaliation claims against the remaining Defendants should be dismissed on the merits.

The R&R recommends that Defendants' Motion for Summary Judgment be denied, finding that Plaintiff's failure to exhaust his administrative remedies as to Defendant Bertolini should be excused. Relying on Plaintiff's declaration, the Magistrate Judge found that Plaintiff's "personal papers" were confiscated during the 15 days in which he had to file a timely appeal. R&R at 8. *See* Pl.'s Decl. ¶¶ 1, 3, ECF No. 84-3. As a result, the R&R concludes that "the full administrative remedy process may not have been available to Plaintiff." R&R at 9. Regarding the merits of Plaintiff's retaliation claim, the R&R recommends that Defendants' Motion for Summary Judgment be denied. *Id*. at 13.

## II. STANDARDS OF REVIEW

When a party files objections to an R&R, the district court must review *de novo* those portions of the R&R to which objections are made. *See* Fed. R. Civ. P. 72(b); *United States v. Raddatz*, 447 U.S. 667, 673 (1980). The district court may accept, reject, or modify, in whole or in part, the findings and recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1); *Raddatz*, 447 U.S. at 673-74.

Summary judgment is proper "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of

material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Weldon v. Kraft, Inc.*, 896 F.2d 793, 797 (3d Cir. 1990) (citing *Sorba v. Pa. Drilling Co.,* 821 F.2d 200, 204 (3d Cir. 1987)).

## III. ANALYSIS

### A. Plaintiff's Grievances Against Defendants

On May 16, 2015, Defendants Friedline, Anderson, Baummer, and Marino, prison employees at SCI Forest, conducted a search of Plaintiff's cell during a general lockdown. Second Am. Compl. ¶¶ 11, 38. During the search, Defendant Anderson confiscated Plaintiff's typewriter, which had a broken plastic paper guide. Pl.'s Decl. ¶¶ 2, 9, ECF No. 84-1. Defendants argue that the typewriter was properly confiscated as contraband because the broken piece could be used as a weapon. Defs.' Objs. R&R, ECF No. 97. *See* Dep't Pol'y DC-ADM 815, Personal Property, State Issued Items, and Commissary/Outside Purchases.[2] Plaintiff alleges, however, that Defendant Baummer told him, "We are taking your typewriter until you stop filing lawsuits against us." Second Am. Compl. ¶ 16. Plaintiff further claims that Baummer's statement is evidence that Defendants' confiscation of Plaintiff's typewriter was retaliation for a previous lawsuit that Plaintiff had filed against Defendant Friedline.[3] Second Am. Compl. ¶ 55.

---

[2] The Pennsylvania Department of Corrections defines contraband as "any item altered from its original state." DC-ADM 815, § 3-C-1. *See* Defs.' Objs. R&R 13-14.
[3] The R&R references multiple "lawsuits and grievances" that Jordan has filed against prison employees R&R at 4. In his deposition, Plaintiff admitted that the only previous lawsuit involving Defendants in this

3

After Defendants confiscated his typewriter, Plaintiff filed three grievances through SCI Forest's inmate grievance system. *See* App. Defs.' Mot. Summ. J. 79-97, ECF No. 63. The first two, Grievance No. 566724 and Grievance No. 568007, describe the incident on May 16, 2015. Grievance No. 566724 was rejected because Plaintiff failed to provide the appropriate documentation. Plaintiff then submitted a new grievance, No. 568007, with the appropriate documentation. The third, Grievance No. 571450, describes an encounter at the clerk's office between Plaintiff and Defendant Bertolini on June 10, 2015, in which Bertolini offered to return the typewriter in exchange for resolving Grievance No. 568007 against the other Defendants.[4] When Plaintiff refused the offer, Defendant Bertolini allegedly "snatched" the typewriter out of his hands. Second Am. Compl., ¶ 29. Defendant Bertolini maintains that the typewriter remained on a table throughout their conversation. App. Defs.' Mot. Summ. J. 140. Plaintiff claims that Defendant Bertolini's actions were in retaliation for Plaintiff's refusal to withdraw Grievance No. 568007 against Defendants Friedline, Anderson, Baummer, and Marino. The typewriter was ultimately returned to him without the broken plastic paper guide. *Id.* at 53, 61.

Defendants seek dismissal of Plaintiff's claim against Defendant Bertolini, arguing that Plaintiff failed to exhaust his administrative remedies for the issues raised in Grievance No. 571450. The parties do not dispute that Jordan has exhausted his administrative remedies for claims he makes against the other Defendants. Instead, they seek dismissal of Plaintiff's retaliation claims on the merits, as discussed below.

---

case was against Defendant Friedline, and that Plaintiff subsequently withdrew the lawsuit. *See* Defs.' Objs. R&R 14; Pl.'s Dep. 13:11- 16:18, 17:15-18:21.

[4] Citing Plaintiff's Second Amended Complaint, ¶ 23, the R&R refers to Grievance No. 558759. R&R at 4. However, this number refers to Plaintiff's personal property inventory number, not his grievance number. *See* Second Am. Compl. ¶ 21; Ex. C of Pl.'s Second Am. Compl.

## B. Exhaustion of Administrative Remedies Against Defendant Bertolini

### 1. The Prison Litigation Reform Act

Defendants argue that Plaintiff's retaliation claim against Defendant Bertolini must fail and summary judgment should be granted in his favor because Plaintiff failed to exhaust his administrative remedies for his claims against Defendant Bertolini. Defs.' Br. Supp. Mot. Summ. J., ECF No. 62. The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The U.S. Supreme Court has emphasized that § 1997e(a) is a bright-line rule, such that district court judges do not have discretion to hear a case if a prisoner has failed to exhaust. *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). *See also Porter v. Nussle*, 534 U.S 516, 532 (2002) ("the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong"); *Booth v. Churner*, 532 U.S. 731, 741 & n.6 (2001) ("an inmate must exhaust irrespective of the forms of relief sought and offered through administrative remedies").

Whether or not a prisoner has exhausted "is a question of law to be determined by a judge, even if that determination requires the resolution of disputed facts." *Small v. Camden County*, 728 F.3d 265, 269 (3d Cir. 2013). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). The exhaustion requirement may not be satisfied "by filing an untimely or otherwise

procedurally defective . . . appeal." *Id*. at 83. "[P]rison grievance procedures supply the yardstick for measuring procedural default." *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004). If a prisoner fails to follow administrative procedures precisely at any stage in the prison's grievance system process, he cannot bring suit in federal court. *Id*. at 222.

### 2. The DC-ADM 804 Inmate Grievance System

DC-ADM 804, the policy manual governing inmate grievance procedures for the Pennsylvania Department of Corrections, outlines three stages of the grievance process. *See* Policy Statement: Inmate Grievance System, Commonwealth of Pa. Dep't of Corrections (May 1, 2015), http://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/804%20Inmate%20Grievances.pdf. First, a prisoner must timely submit a written grievance for initial review within 15 working days of the incident. DC-ADM 804, § 1-A-8. Second, a prisoner has 15 working days from the date of the initial review response or rejection to submit a written appeal for intermediate review to the facility manager. *Id.* at § 2-A-1-a. Finally, a prisoner has 15 working days from the date of the facility manager's decision to appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). *Id.* at § 2-B-1-b. *See Booth v. Churner*, 206 F.3d 289, 293 n.2 (3d Cir. 1997), *aff'd* 532 U.S. 731 (2001).

DC-ADM 804 explicitly authorizes extensions of time for the grievance procedure deadlines. Relevant to this case, regarding appeals to final review, DC-ADM 804 states: "A time extension for filing a grievance will be considered on a case-by-case basis." *Id*. at § 2-B-1-c. *See also* App. Defs.' Mot. Summ. J. 108. When deciding whether to grant an extension, the Chief Grievance Officer will consider the prisoner's explanation for delay, including whether the prisoner was temporarily or permanently transferred to another facility, whether there was an authorized temporary absence for an extended period, whether there was a delay in mail delivery,

or "any other reason the Chief Grievance Officer/designee deems appropriate." DC-ADM 804, § 2-B-1-c. In addition, "If it is determined that a delay was caused by a circumstance listed above, a reasonable extension of time for filing shall be permitted." *Id*.

### 3. Excuse from Exhaustion

Given the PLRA's unambiguous text, courts are extremely reluctant to excuse prisoner plaintiffs from the exhaustion requirement. The Supreme Court has held that an inmate's failure to exhaust is not excused, even in light of "special circumstances." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). However, the Court acknowledged that an inmate is only required to exhaust grievance procedures that are "available." *Id*. at 1855. If such procedures are unavailable, then exhaustion is not required. *Id*. at 1859-60. For example, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use" such that "no ordinary prisoner can discern or navigate it." *Id.* at 1859. However, "When an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion." *Id*.

Thus the question before the Court is whether the administrative process was "available" to Plaintiff when he attempted to appeal Grievance No. 571450 for final review. Plaintiff argues that he was unable to submit his final appeal within the required 15 working days[5] because he lacked access to his legal papers. Pl.'s Decl. ¶ 3, ECF No. 84-3. Plaintiff received the intermediate appeal decision on August 6, 2015; the appeal was therefore due on or about August 27, 2015. *Id*. at ¶ 2. However, between August 17, 2015 and September 16, 2015, SCI Forest withheld "3 boxes, 1 footlocker of paper and . . . 1 box of paperwork," including all of the documentation related to Grievance No. 571450. Pl.'s Decl., ECF No. 84-3, ¶ 1. Plaintiff's property was eventually returned

---

[5] "For the purposes of this policy, working days are Monday through Friday, excluding state holidays." DC-ADM 804, Glossary of Terms, p. 35.

7

to him on September 17, 2015, at which time he filed a late appeal that was denied as untimely.[6] App. Defs.' Mot. Summ. J. 96-97. The R&R found that Plaintiff's lack of access to his paperwork hindered his ability to exhaust his administrative remedies. R&R at 9. The R&R therefore recommends that summary judgment be denied as to Defendant Bertolini. *Id*.

In their objections to the R&R, Defendants argue that Plaintiff should have asked for an extension of time to file an appeal, which may be granted on a case-by-case basis. Defs.' Objs. R&R 8. Because he failed to do so, they contend, Plaintiff failed to exhaust his administrative remedies and his claim against Defendant Bertolini should be dismissed. *Id*. at 3. Plaintiff counters that he could not have requested an extension without access to his paperwork. Pl.'s Opp'n to Defs.' Objs. to R. & R., ECF No. 100.

The Court finds that in failing to request an extension, Plaintiff has failed to exhaust his administrative remedies. A plain reading of the DC-ADM 804 policy suggests that Plaintiff could have requested an extension after he regained access to his paperwork, and thus a remedy was "available" within the meaning of § 1997e(a). The policy states: "If it is determined that a delay *was caused* by a circumstance listed above, a reasonable extension of time for filing shall be permitted." DC-ADM 804, § 2-B-1-c (emphasis added). The use of past tense in this context

---

[6] In denying Plaintiff's final appeal of Grievance No. 571450 as untimely, the Chief Grievance Officer acknowledged that Plaintiff did not have access to his property during the tolling of the appeal period, but found that Plaintiff's "inability to access property was self-inflicted." Specifically, the Officer noted:

> [C]ontact with the [correctional] facility clearly indicates that property was withheld; however, it was a result of your failure to follow policy in regards to property limitations. Had you either maintained property compliance or properly requested additional legal storage, this situation may not have occurred. To that end, your inability to access property was self-inflicted and cannot be used as an excuse for the untimely filing of the above appeals. Future correspondence regarding these grievances/issues may be filed without action or reply.

App. Defs.' Mot. Summ. J. 97. However, neither the parties nor the R&R addresses this explanation. The Court finds it is not dispositive and declines to rely on it as the basis for its decision on the exhaustion issue.

indicates that an inmate may request an extension even after the deadline to appeal has passed. When his materials were returned after the deadline for filing a final appeal, Plaintiff could have immediately requested an extension from the Chief Grievance Officer before attempting to file an appeal. Instead, he filed a late appeal to SOIGA with a note indicating he was aware he had missed the deadline, without any request for extension. *See* App. Defs.' Mot. Summ. J. 96.

Courts have repeatedly required strict adherence to the exhaustion requirement regarding requests for extension of time. For example, in *Ramos v. Smith*, the Third Circuit affirmed the dismissal of plaintiff's complaint for failure to exhaust, noting that the prisoner neglected to request an extension of time to appeal his grievances even though the administrative process at the Federal Detention Center permitted such a request. 187 F. App'x 152, 154 (3d Cir. 2006). *See also Wallace v. Miller*, 544 F. App'x 40, 42 (3d Cir. 2013) (finding that "the applicable regulations allow for an extension of time for filing a formal administrative remedy request" and that plaintiff failed to show that the grievance system was unavailable for exhaustion purposes).

In this case, Plaintiff does not claim he was unaware that an extension of time was available; instead, he protests that requesting an extension was impossible without access to his paperwork. But Plaintiff misunderstands the DC-ADM 804 policy on this issue: documentation of the initial grievance and intermediate appeal are necessary for filing an appeal, but nothing in the policy states that it is required for requesting an extension. *See* DC-ADM 804, § 2-B-1-j. *See also* Decl. Bell, App. Defs.' Mot. Summ. J. 109 ("Pursuant to DC-ADM 804, an inmate appealing a grievance to final review is responsible for providing SOIGA all required documentation relevant to the appeal."). Furthermore, a plaintiff's belief that pursuing an available administrative remedy would be futile does not excuse him from the exhaustion requirement. *Nyhuis v. Reno*, 204 F.3d 65, 71 (3d Cir. 2000). And finally, Plaintiff fails to respond to the issue central to his failure to

9

request an extension: that he could have done so even after the deadline, when his papers were returned.

In Plaintiff's opposition to Defendants' objections to the R&R, Plaintiff cites *Davis v. Warman* for the proposition that an inmate may overcome a failure to exhaust by showing that "there was some extraordinary circumstance he was prevented from complying with the statutory mandate." *Davis v. Warman*, 49 F. App'x 365, 367 (3d Cir. 2002). First of all, Plaintiff has not demonstrated any "extraordinary circumstances" that may have prevented him from requesting an extension. Furthermore, the plaintiff in *Davis* did *not* prevail by pointing to some extraordinary circumstance; instead, the Third Circuit found that his failure to exhaust was fatal because there was no interference from prison officials in the grievance process. *Id*. Perhaps most critically, the Supreme Court has made it clear that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." *Ross v. Blake*, 136 S. Ct. at 1862.

In light of the clear and unambiguous language of § 1997e(a) of the PLRA, Plaintiff's failure to request an extension of time to appeal is fatal to his claims against Defendant Bertolini. The Court declines to accept the R&R's finding that the full administrative process may not have been available to Plaintiff. *See* R&R at 9. The R&R neglected to consider that DC-ADM 804 allows inmates to request an extension even after the deadline for filing an appeal has passed. The Court therefore grants summary judgment as to Defendant Bertolini and dismisses Plaintiff's retaliation claims against Defendant Bertolini. *See* Second Am. Compl. ¶¶ 65-73.

## C. Plaintiff's Retaliation Claim Against Remaining Defendants

The remaining Defendants argue that Plaintiff has failed to establish all three necessary elements of his retaliation claim against them, and that they are therefore entitled to summary judgment as well. In order to state a *prima facie* case of retaliation, a prisoner plaintiff must show:

1) The conduct in which he was engaged was constitutionally protected;

2) He suffered an "adverse action" at the hands of prison officials; and

3) His constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him.

*Carter v. McGrady*, 292 F.3d 152, 157-58 (3d Cir. 2002) (citing *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2000)). Once the plaintiff has established a *prima facie* case, the burden then shifts to the defendant to demonstrate that it "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." *Carter*, 292 F.3d at 158 (incorporating Turner v. Safley, 482 U.S. 78, 89 (1987)).

As the R&R states, Defendants concede that Plaintiff can prove the first and second elements of his retaliation claim based on the confiscation of his broken typewriter during the cell search. Defendants therefore focus on the third prong, arguing that Plaintiff cannot prove that his prior grievances and lawsuits were a "substantial or motivating factor" for confiscating the broken typewriter. *Carter*, 292 F.3d at 158. To satisfy the third prong of his retaliation claim, Plaintiff must show a causal connection between his constitutionally protected activity and the adverse action he allegedly suffered. "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (citing *Lauren W. ex rel Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)). "In the absence of that proof the plaintiff must

show that from the 'evidence gleaned from the record as a whole' the trier of the fact should infer causation." *Lauren W.*, 480 F.3d at 267 (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)).

The Magistrate Judge found that Plaintiff had raised a genuine issue of material fact regarding the required causal connection between his protected activity and the adverse action. R&R at 11. The Court agrees. Plaintiff's Declaration states, "When I informed Baummer of Anderson's action, Baummer stated: 'We are taking your typewriter until you stop filing lawsuits against us.'" ECF No. 84-3, ¶ 10. Plaintiff has also provided evidence suggesting that Defendants would not have confiscated his typewriter but for his previous filing of lawsuits and grievances. For example, when Plaintiff's typewriter was inventoried upon his arrival at SCI Forest in March of 2014, the broken piece was noted but the typewriter was not considered contraband, meaning that the Plaintiff was allowed to keep the typewriter for over a year before it was confiscated. Pl.'s Decl. ¶ 10, ECF No. 84-1. Furthermore, Plaintiff never received a misconduct or contraband charge related to the typewriter. *Id*. ¶ 7. Finally, Defendants confiscated Plaintiff's typewriter approximately twenty-six days[7] after Plaintiff filed a lawsuit against Defendant Friedline, suggesting a possible temporal connection. Pl.'s Opp'n Defs.' Obj.s R&R 14; Second Am. Compl. ¶ 19.

Defendants object that the Magistrate Judge failed to consider that *respondeat superior* cannot serve as the basis for liability in § 1983 suits. Defs.' Objs. R&R 12 (citing *Hampton v.*

---

[7] In their Objections to the R&R, Defendants state that two months passed between Plaintiff's filing of a grievance against Defendant Friedline and their confiscation of Plaintiff's typewriter on May 16, 2015. Defs.' Obs. R&R 15. However, as Plaintiff notes in his Response in Opposition to Defendants' Objections, only twenty-six days passed between Plaintiff's filing of a *lawsuit* against Defendant Friedline on April 20, 2015 and the incident on May 16, 2015. Pl.'s Opp'n Defs.' Obj.s R&R 14. Plaintiff erroneously filed the suit in the Commonwealth Court on January 27, 2015, and it was transferred to the Court of Common Pleas of Forest County on April 20, 2015. Pl.'s Counter Statement Material Facts ¶ 9, ECF No. 83; Pl.'s Dep. 16; Second Am. Compl. ¶¶ 8-10.

*Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (3d Cir. 1976)). Rather, the plaintiff must show that each defendant personally participated in the alleged constitutional violation. Defs.' Objs. R&R 12 (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Rode v. Dellarciprete*, 845 F.2d at 1207.

The Court does not understand Plaintiff to be arguing, however, that Baummer's statement should be attributed to Defendants Friedline, Marino, and Anderson on the theory of *respondeat superior*. Instead, the Court reads Plaintiff's claim that "Baummer could speak for everyone at this particular point," as an inartful way of saying that Baummer's statement—"*We* are taking your typewriter until you stop filing lawsuits against *us*"—is evidence of the motivation of all four Defendants. Second Am. Compl. ¶ 16. (emphasis added). As noted in the R&R, *pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). The Court finds that a trier of fact could conclude that Baummer's statement supports Plaintiff's allegation of a retaliatory motive on behalf of Defendants Anderson, Marino, and Friedline.

Finding that Plaintiff had established a *prima facie* case of retaliation, the Magistrate Judge proceeded to the burden shifting analysis outlined in *Carter*. *See* 292 F.3d at 158 (a defendant must prove by a preponderance of the evidence that it "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest"). At the summary judgment stage, "prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334.

Defendants insist that they would have taken the same action regardless of Plaintiff's protected conduct because there were legitimate penological reasons for confiscating his typewriter. Defendants repeatedly point out that "[t]he broken plastic piece could have been used to make a weapon," and that "[t]he typewriter constituted illegal contraband" under DC-ADM 815. Defs.' Br. Supp. Mot. Summ. J. 10, ECF No. 62. As noted above, however, Plaintiff was permitted to keep the typewriter for fourteen months before it was confiscated, even though the broken piece was noted when he was admitted to SCI Forest. Pl.'s Decl. ¶ 10, ECF No. 84-1. It was then confiscated within twenty-six days of his filing of the lawsuit. Pl.'s Opp'n Defs.' Objs. R&R 14; Second Am. Compl. ¶ 19. And, Plaintiff has alleged one statement indicating that the Defendants may have been acting with a retaliatory motive. At this stage, these allegations must be taken as true. The Court finds that Plaintiff's allegations create a genuine issue of material fact for which summary judgment is not appropriate.

Accordingly, the Court **HEREBY ORDERS**:

(1) The Court respectfully **DECLINES TO ADOPT** the Report and Recommendation [Doc. 96] as to Defendant Bertolini, and **ADOPTS** it as to the remaining Defendants.

(2) Defendant Bertolini's Motion for Summary Judgment [Doc. 60] is **GRANTED** as to Plaintiff's failure to exhaust his administrative remedies;

(3) The remaining Defendants' Motion for Summary Judgment [Doc. 60] is **DENIED**;

(4) The clerk shall send copies of this Order to the parties.

DATED this 6th day of August, 2018.

Barbara Jacobs Rothstein
U.S. District Court Judge